O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MR. GARRETT WARREN, an individual,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CITY OF SAN BERNARDINO, CALIFORNIA, a municipal corporation; CITY OF SAN BERNARDINO POLICE DEPARTMENT, a municipal subdivision; DET. GARY SCHULKE, in his official capacity as an agent/employee of CITY OF SAN BERNARDINO, CALIFORNIA, and in his individual capacity, and DOES 1 through 100,<br><br>　　　　Defendants. | Case No. EDCV 08-72-VAP (OPx)<br><br>**[Motion filed on June 19, 2008]**<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |

　　Defendants' Motion to Dismiss came before this Court for hearing on July 28, 2008. After reviewing and considering all papers filed in support of, and in opposition to, the Motion, as well as the arguments advanced by counsel at the hearing, the Court GRANTS the Motion.

# I. BACKGROUND

## A. Procedural Background

Plaintiff Garrett Warren filed a Complaint on January 18, 2008, and a First Amended Complaint ("FAC") on June 17, 2008. The FAC alleges claims for violations of 28 U.S.C. section 1983 ("section 1983"), negligence, and negligent infliction of emotional distress against Defendants City of San Bernardino ("City"), City of San Bernardino Police Department ("SBPD"), and Gary Schulke.

On June 19, 2008, Defendants filed a Motion to Dismiss First Amended Complaint ("Motion" or "Mot."). On July 14, 2008, Plaintiff filed Opposition ("Opp'n"); Defendants filed a timely Reply.

## B. Factual Background

In May 2000, while Plaintiff and his wife, Claudia Haro, were involved in a "bitter" divorce and custody proceeding, she hired another person to commit an "execution style shooting" of Plaintiff. (FAC ¶¶ 12-13.) The perpetrator shot Plaintiff in the chest, neck, hip, and face. (Id. ¶ 14.) Plaintiff survived the shooting. (Id. ¶ 15.)

In January 2007, during a preliminary hearing held in connection with Ms. Haro's criminal prosecution, Plaintiff learned that Defendants SBPD and Schulke knew

1 in advance of the murder-for-hire scheme.  (Id. ¶ 17.)
2 Ms. Haro's brother had approached Lovell Campbell, an
3 SBPD confidential informant, about committing the murder.
4 (Id. ¶¶ 19-21.)  The FAC describes Campbell as a "paid
5 employee and confidential informant" of SBPD.  (FAC ¶
6 19.)  Campbell agreed to commit the murder if provided
7 with $4,000 and a map to Plaintiff's house.  (Id. ¶ 22.)
8 Campbell shared information about the planned murder with
9 Defendant Schulke, and showed Schulke the map of
10 Plaintiff's house.  (Id. ¶¶ 23, 26.)

12      According to Plaintiff, Defendant Schulke did nothing
13 after learning of the plan to murder Plaintiff.  "With
14 full knowledge of the pending murder for hire plot of
15 [Plaintiff], Defective Schulke[ ] failed to open an
16 investigation into the matter, upon information and
17 belief, contrary to articulated San Bernardino Policy and
18 Procedure in dealing with confidential informants."  (Id.
19 ¶ 24.)  Defendant Schulke also "failed to monitor
20 Campbell's behavior" and "failed to warn [Plaintiff] of
21 the murder for hire plot and the imminent threat on
22 [Plaintiff's] life."  (Id. ¶ 25.)  By these failures,
23 Defendants are alleged to have "increased [Plaintiff's]
24 exposure to violent bodily harm."  [Id. ¶ 35 (emphasis in
25 original).]  Plaintiff alleges that Defendant Schulke
26 "did nothing," because he did not want to interfere with
27 ///

3

1  an ongoing SBPD narcotics investigation in which Campbell
2  was involved.  (Id. ¶ 27.)
3
4       Nevertheless, "[f]or some reason, Campbell and his
5  accomplice did not complete the murder, in all likelihood
6  because they got lost and could not find [Plaintiff's]
7  house."  (Id. ¶ 28.)  A different man was then hired to
8  shoot Plaintiff and did so.  (Id.)
9
10                    **II. LEGAL STANDARD**
11      Under Rule 12(b)(6), a party may bring a motion to
12  dismiss for failure to state a claim upon which relief
13  can be granted.  As a general matter, the Federal Rules
14  require only that a plaintiff provide "'a short and plain
15  statement of the claim' that will give the defendant fair
16  notice of what the plaintiff's claim is and the grounds
17  upon which it rests."  Conley v. Gibson, 355 U.S. 41, 47
18  (1957) (quoting Fed. R. Civ. P. 8(a)(2)); Bell Atlantic
19  Corp. v. Twombly, 550 U.S. __, 127 S. Ct. 1955, 1964
20  (2007).  In addition, the Court must accept all material
21  allegations in the complaint -- as well as any reasonable
22  inferences to be drawn from them -- as true.  See Doe v.
23  United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC
24  Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096
25  (9th Cir. 2005).
26  ///
27  ///
28

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic, 127 S. Ct. at 1964-65 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 1965.

### III. DISCUSSION

Defendants' Motion argues that Plaintiffs' federal claims under section 1983 should be dismissed, because no claim can be stated on the basis of an alleged failure to act. (Mot. at 2.) Defendants further contend they are shielded from section 1983 claims by the doctrine of qualified immunity. (Mot. at 9.) With respect to Plaintiffs' state law claims, Defendants assert that they are not liable, because they did not have a duty to warn or a duty to act under the facts alleged in the FAC. (Mot. at 9-10.)

**A.   Section 1983 Claims**

To state a claim under section 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right.

Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988). Plaintiff alleges three claims under section 1983. In the first claim, Plaintiff alleges that Defendant Schulke deprived him of his substantive due process rights under the Fourteenth Amendment. (FAC ¶¶ 33-37.) In the second claim, Plaintiff alleges that Defendants City and SBPD caused the Fourteenth Amendment deprivation by their customs, practices, and policies. (Id. ¶ 44.) In the third claim, Plaintiff alleges that Defendants City and SBPD "knowingly, recklessly, and with deliberate indifference failed to instruct, supervise, control, and discipline on a continuing basis" Defendant Schulke. (Id. ¶ 55.)

Where, as here, a plaintiff alleges he was harmed by the actions of a third party who was not a state actor, the plaintiff's claim must fall within an exception to the general rule that the Constitution does not require state actors to protect persons from the violent acts of private parties. DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 197 (1989). Under the "special relationship" exception, state actors may be liable for the act of a third party in situations where they have created a relationship with the plaintiff through, for example, incarceration or involuntary hospitalization. L.W. v. Grubbs, 974 F.2d 119, 121 (9th Cir. 1992) (citations omitted). Under the "danger

creation" exception, state actors may be liable where they have created the danger resulting in injury to the plaintiff.  Id.  A claim based on the danger-creation theory "necessarily involves affirmative conduct on the part of the state in placing the plaintiff in danger." Id. (citations omitted).

Here, Plaintiff argues that he has stated a section 1983 claim under a state-created danger theory.  (Opp'n at 6-7.)  Plaintiff argues that Defendants "were complicit in the murder for hire scheme," and "actively and affirmatively increased [his] harm of murder."  (Id. at 6:3-5.)  Plaintiff emphasizes that Defendants "directly hired and retained Mr. Lovell Campbell whom they knew had a plan to . . . murder [Plaintiff]."  (Id. at 10:16-17.)  To further emphasize this point, Plaintiff's opposing papers state in bolded print:  "The hiring and retention of a known assassin is what the Circuit Courts mean when they talk about the state created danger."  (Id. at 10:18-20.)

Despite the implication in Plaintiff's opposing papers that Defendants retained Campbell with the intent that Campbell murder Plaintiff, the FAC contains no such allegation.  Plaintiff's attempt to characterize Defendants' use of a confidential informant as the sort of "affirmative" conduct giving rise to a section 1983

7

claim cannot transform the allegations contained in the FAC.  Plaintiff's pleading is replete with claims that Defendants "failed" to take certain actions:  they failed to investigate the murder-for-hire plot, they failed to monitor the behavior of the hired "hit man," who was an SBPD confidential informant, and they failed to warn Plaintiff.  (FAC ¶¶ 24-25.)  These allegations can be distinguished from situations in which the Ninth Circuit has found section 1983 liability under a state-created danger theory.

In L.W. v. Grubbs, the plaintiff was a registered nurse employed at a state custodial institution for young male offenders.  974 F.2d at 120.  The Ninth Circuit held that the plaintiff had stated a claim for liability where she alleged she was raped by an inmate who was selected by her supervisors to work alone with her in the institution's medical clinic.  Id. at 120, 122.  Her supervisors selected the inmate, even though he was a violent sex offender who had failed all treatment programs and was considered "very likely to commit a violent crime if placed alone with a female."  Id. at 120.  The plaintiff's allegations stated a claim for section 1983 liability, because she sought to "make Defendants answer for their acts that independently created the opportunity for and facilitated [the] assault on her."  Id. at 122 (citations omitted).  The defendants

8

had "used their authority as state correctional officers to create an opportunity for [the assault] that would not otherwise have existed." Id. at 121.

In a more recent case, a plaintiff alleged the defendant police officer had affirmatively placed her in danger when he informed her neighbor that she had made a molestation complaint against the neighbor. Kennedy v. City of Ridgefield, 439 F.3d 1055, 1057-58 (9th Cir. 2006). The officer did so despite plaintiff's request that she be given notice before her neighbor was informed of her complaint, which the officer failed to provide. Id. at 1058. The neighbor then shot the plaintiff and her husband. Id. The Ninth Circuit held that the officer had "affirmatively created a danger to [the plaintiff] she otherwise would not have faced, i.e., that [the neighbor] would be notified of the allegations before [the plaintiff's family] had the opportunity to protect themselves from his violent response to the news." Id. at 1063.

In contrast with the state actors in L.W. and Kennedy, Defendants here are not alleged to have taken any actions that "independently created the opportunity for and facilitated" the shooting of Plaintiff. L.W., 974 F.2d at 122. Nor did Defendants "create an opportunity" for the shooting of Plaintiff "that would

not otherwise have existed." Id. at 121. The mere use by the SBPD of Campbell as a paid confidential informant did not create an opportunity for Campbell to be hired as a killer that would not otherwise have existed. Even if Campbell were not a paid informant at the time he was asked to kill Plaintiff, the absence of that relationship with Defendants would not have affected whether or not he could be hired to commit murder.[1] Moreover, the FAC alleges that Campbell was unsuccessful in his efforts to murder Plaintiff, and Plaintiff was in fact shot by another person who had no connection with Defendants. (FAC ¶ 28.) In other words, the state "placed him in no worse position than that in which he would have been had it not acted at all." DeShaney, 489 U.S. at 201. Plaintiff therefore has not alleged sufficient facts to support a section 1983 claim under a state-created danger theory.

Plaintiff's allegations are more similar to those the Supreme Court found insufficient in DeShaney. In that case, a minor plaintiff sued government social workers who received complaints about abuse by his father but did

---

[1] Plaintiff argues that "had Campbell never been hired or retained as a paid assassin during his employment for the City, the murder for hire scheme would, arguably, never have been hatched, and [Plaintiff] would never have been shot." (Opp'n at 11:5-8.) This assertion is unsupported by either logic or common sense. Furthermore, it is an example of a fact asserted in Plaintiff's opposing papers that is not alleged in the FAC.

1  not remove him from his father's custody.  DeShaney, 489
2  U.S. at 191.  These complaints were made by hospital
3  emergency room staff on two occasions.  Id. at 192-93.
4  In addition, the plaintiff's county caseworker made
5  monthly home visits in which she observed "suspicious
6  injuries" on the boy's head, and on two visits the
7  caseworker was informed the boy was "too ill to see her."
8  Id.  The defendant county took no action, and two years
9  after the first report of child abuse, the plaintiff was
10 beaten so severely by his father that he fell into a
11 life-threatening coma.  Id. at 192-93.  Further medical
12 treatment of the plaintiff revealed that he had sustained
13 traumatic head injuries over a long period of time, and
14 he was expected to spend the remainder of his life in an
15 institution for the profoundly mentally disabled.  Id. at
16 193.  On these facts, the Court found no Fourteenth
17 Amendment substantive due process violation to support a
18 claim under section 1983.  Id. at 197.

20     To the extent that Plaintiff also attempts to plead
21 his case under the "special relationship" theory of
22 liability, he has not alleged any such relationship
23 between himself and Defendants.  See L.W., 974 F.2d at
24 121 (stating that section 1983 liability may be found
25 where the state "has created a relationship with the
26 plaintiff, such as holding him in custody or
27 involuntarily hospitalizing him").  Rather, Plaintiff

11

states in his opposing papers that Defendant Schulke "had a special relationship with Lovell Campbell," the confidential informant. (Opp'n at 9:10.)

Accordingly, Defendant's Motion is granted and Plaintiff's first, second, and third claims are dismissed without leave to amend.[2]

## B. State Law Claims

Defendants' Motion argues for dismissal of Plaintiff's state law claims for negligence and negligent infliction of emotional distress, because Defendants had no duty to warn Plaintiff of any danger. (Mot. at 9-10.)

Under California law, "[a]s a general rule, one owes no duty to control the conduct of another, nor to warn those endangered by such conduct." Davidson v. City of Westminster, 32 Cal. 3d 197, 203 (1982). "Such a duty may arise, however, if (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's

---

[2] Having determined that Plaintiff's section 1983 claims should be dismissed for failure to allege a theory of liability for the acts of a private party, the Court does not address Defendants' additional argument that they are entitled to qualified immunity.

In addition, Plaintiff has not suggested any further facts he could plead in a second amended complaint so as to state a claim for relief, either in his opposing papers or at the hearing on the Motion.

12

conduct, or (b) a special relation exists between the actor and the other which gives the other a right to protection." Id. (internal quotation and citations omitted). In other words, to establish that Defendants owed him a duty to warn him of the murder plot against him, Plaintiff must allege facts showing a special relationship between Defendants and the confidential informant, or between Defendants and himself. The FAC fails to allege sufficient facts to state a claim under either theory.

In Tarasoff v. Regents of University of California, the California Supreme Court held that police officers did not owe a duty to warn an eventual victim where they had released the victim's assailant from custody despite knowledge of his specific threat to kill her. 17 Cal. 3d 425, 430, 432, 444 (1976). The court contrasted the absence of any special relationship between the police officers and the assailant with the assailant's relationship with his therapist, who did owe a duty to warn the victim. Id. at 436. The court observed that "[w]hen a therapist determines or pursuant to the standards of his profession should determine, that his patient presents a serious danger of violence to another, he incurs an obligation to use reasonable care to protect the intended victim against such danger." Id. at 431.
///

1    Here, Plaintiff has not alleged any facts showing a
2 special relationship between Defendants and their
3 confidential informant akin to that of a therapist and
4 patient, such that Defendants owed Plaintiff a duty to
5 warn him of an attempted murder.  Plaintiff alleges only
6 that the informant kept Defendants "fully apprised" of
7 the murder plot and showed Defendant Schulke a map of
8 Plaintiff's home.  (FAC ¶ 26.)  Plaintiff further alleges
9 that Defendant Schulke "recognized the information from
10 [the informant] to be both reliable and trustworthy," but
11 ignored it.  (Id. ¶ 27.)  This conclusion is not
12 analogous to a therapist's determination "pursuant to the
13 standards of his profession" that a patient presents a
14 danger to others.  Tarasoff, 17 Cal. 3d at 431.
15 Plaintiff has presented no other authority supporting the
16 finding of a special relationship between a police
17 officer and a confidential informant giving rise to a
18 duty to warn a third party.

20    Furthermore, Plaintiff has failed to allege any facts
21 showing the existence of a relationship between himself
22 and Defendants giving rise to a duty to warn.
23 California courts have found such a relationship where
24 police officers give a person specific but misleading
25 assurances that he or she is not in danger.  See
26 Carpenter v. City of Los Angeles, 230 Cal. App. 3d 923,
27 (1991) ("Here, the duty arises because the police, after

14

assuring appellant that Jenkins posed no real danger, received reliable information that appellant's life was in danger and failed to warn him."). Courts also have held a duty to warn exists when "the government's actions create a foreseeable peril to a specific foreseeable victim, . . . [and] the danger is not readily discoverable by the endangered person." <u>Wallace v. City of Los Angeles</u>, 12 Cal. App. 4th 1385, (1993). Here, Plaintiff has not alleged that Defendants gave him any assurances concerning his safety. Indeed, he has not alleged that he had any contact with Defendants in connection with the events at issue. In addition, as set forth above, Plaintiff has not sufficiently alleged any affirmative action on the part of Defendants such that they could have "create[d] a foreseeable peril" to him. <u>Id.</u> Plaintiff's reliance on <u>Carpenter</u> and <u>Wallace</u> therefore is unavailing.

Accordingly, the Court grants Defendants' Motion to dismiss Plaintiff's state law claims and dismisses Plaintiff's fourth and fifth claims for negligence and negligent infliction of emotional distress without leave to amend.[3]

---

[3] Plaintiff concedes in his Opposition that if his claim for negligence fails, then his claim for negligent infliction of emotional distress necessarily fails as well. (Opp'n at 19.)

Furthermore, Plaintiff has not suggested any further
(continued...)

**IV. CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss First Amended Complaint without leave to amend.

Dated: July 29, 2008

VIRGINIA A. PHILLIPS
United States District Judge

---

[3](...continued)
facts he could plead in a second amended complaint so as to state a claim for relief, either in his opposing papers or at the hearing on the Motion.

16